NOTICE
Decision filed 02/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230601-U

NO. 5-23-0601

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-26 |
| | ) | |
| NATHANIEL L. LEMONS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in accepting the defendant's guilty plea and denying his request to represent himself. The defendant waived his constitutional challenge to the deprivation of his right to self-representation by voluntarily pleading guilty, and further failed to establish any structural error in the court's decision. The defendant's argument also fails on the merits because the court did not abuse its discretion in denying the defendant's request, where his statements were not clear and unequivocal requests to proceed *pro se*, and the court found that the defendant's conduct was meant to delay and obstruct the proceedings and his claims regarding counsel's performance lacked merit. Therefore, the judgment of the circuit court is affirmed.

¶ 2    Defendant Nathaniel L. Lemons pled guilty to aggravated battery. After inquiring into his *pro se* posttrial claims of ineffective assistance of counsel and finding no evidence of possible neglect, the circuit court sentenced him to six years of imprisonment. After sentencing, the court appointed conflict counsel. The court denied Lemons' counsel's motion to withdraw his guilty

1

plea or, alternatively, to reduce his sentence. Lemons now appeals, arguing that the circuit court erred in denying his request to represent himself. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4                                         A. Pretrial

¶ 5        This matter stems from an incident that took place on January 7, 2023, in which Lemons struck Denisha Williams with his car and damaged the front door to her residence. He was arrested and charged with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2022)), aggravated battery (*id.* § 12-3.05(f)(1)), and criminal damage to property (*id.* § 21-1(a)(1)). At Lemons' request, the circuit court appointed counsel, and he was represented by an assistant public defender throughout his plea and sentencing hearings.

¶ 6        On February 27, 2023, appointed counsel informed the court that Lemons wished to plead guilty. When the court read him the admonishments required by Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), Lemons stated that he suffered from a physical or mental disability for which he was prescribed medication, and his condition or medication affected his ability to understand the court. When asked whether there was anything the court said that he had not understood, he responded, "All of it." He then confirmed that he had not understood anything the court had said. The court explained that it could not take his plea if he did not understand anything. The court asked counsel if there was a fitness issue with Lemons. Counsel responded, "There is a hundred percent no fitness issue with Mr. Lemons, Judge. We can just have a trial."

¶ 7                         B. Fitness and Mental Health Concerns

¶ 8        The following day, the parties returned for a jury trial. Defense counsel informed the court that Lemons requested a bench trial. The court began to admonish Lemons about the differences

2

between a jury trial and bench trial. Lemons interjected, "Your Honor, I don't understand none of this stuff. All I know is I signed for a plea yesterday that I didn't get. I don't understand why." The court reminded him that at the previous day's hearing, he had stated he understood neither the charges against him nor the plea. Accordingly, the court could not accept a guilty plea to something the defendant did not understand. The court indicated that Lemons could have a plea, a jury trial, or a bench trial. Lemons maintained that he "told *** the truth" about not understanding the proceedings. He was aware that he had signed a plea, but stated that he did not "know what's going on."

¶ 9      The State then presented a new offer to Lemons: in exchange for an open plea to aggravated battery, the State would dismiss the remaining counts. Lemons expressed confusion as to why the previous plea offer of a four-year sentence was taken away from him when he had already accepted it. The court explained that the previous offer was "not the offer on the table anymore." The court then reviewed the charges, but Lemons continued to express a lack of understanding regarding the charges against him. He asked what a motor vehicle was, denied owning a car, and denied using a vehicle to hit Williams.

¶ 10     The court asked how Lemons could plead guilty if he expressed he did not commit the battery. The court explained that it would not force him to plead guilty if he did not wish to do so. Lemons stated he did not want a jury or to go to trial; he "just wanted [his] plea." The court informed him that he had two options: a plea or a trial; if he did not accept responsibility for the plea and did not want a trial, the court was "stuck."

¶ 11     The court then inquired further into Lemons' ability to understand. Lemons indicated that he "maybe" had up to a seventh-grade education, but he could not remember. He stated that he saw a psychiatrist, but he did not know their name. Lemons said he had been prescribed

3

medication, but he had not been taking it since his incarceration. The court noted that Lemons appeared to understand everything said to him and found that Lemons answered the questions appropriately, except when the court asked about the charges. The court again presented Lemons with two choices: plead guilty and admit he hit Williams with a car, or go to trial. Lemons responded that he was not going to admit to something he did not do, and that he did not want to go to trial.

¶ 12    When the court told him that he would have to go to trial, Lemons indicated that he "definitely [didn't] want to go to trial with" the assistant public defender currently representing him. He stated:

> "She's not even a, a defense attorney. She—there's nothing that she asked me that can help me out. Nothing. She didn't ask me if I want a witness. She didn't ask me if I have text messages, anything that can help me out with my case. I don't want to go to trial with her. I'm, I'm bound to get found guilty and spend the rest of my life in jail. I don't want to do that."

The prosecutor then explained to the court that he had communicated to Lemons' counsel that the offer of a four-year sentence in exchange for his plea had remained open until 1:30 p.m. the previous day, "so this is not a situation where the defendant was deprived of an opportunity to accept this plea simply because he didn't understand *** what was going on." Lemons maintained that he accepted the plea but did not understand the "term" the court used.

¶ 13    The court asked defense counsel if Lemons had any mental health issues. Counsel indicated that she had dealt with Lemons for a while, that he was not unfit, and that he understood every conversation with her. She had also listened to phone calls between Lemons and Williams while Lemons was incarcerated. Based on her observations, she believed it was "very clear Mr. Lemons is not suffering from any kind of mental illness that affects him being fit or unfit." When she conveyed the plea offer to Lemons the day before, he "did not wish to accept it at that time." She

4

indicated that he "waffled between" wanting a bench trial or a jury trial, as well as wanting to fire her and represent himself. Counsel informed the court that Lemons had told her he wanted to proceed *pro se*.

¶ 14    The court again asked Lemons about his understanding of the charges, to which Lemons shrugged in response. He stated he understood English but maintained he did not understand "legal terms." The court responded that it was not using any legal terms. When Lemons claimed the court was "trying to force me to understand something that I don't," the court tried again to explain the charges to Lemons, using simpler terms. The court noted that Lemons did not understand that he hit Williams and caused bodily harm to her. Lemons then stated that he did not "wish to proceed with this." He commented that he "didn't ask for somebody to represent [him]," and asked the court "to remove her from [his] case" and "put someone who is actually gonna help [him]."

¶ 15    The court held an off-the-record discussion with counsel regarding any potential fitness issues. The assistant public defender noted that Lemons received some Social Security benefits for mental health issues but maintained that there were no issues with fitness, and that she believed Lemons fully understood everything. The prosecutor indicated that he had listened to some of Lemons' phone calls and believed the contents of the conversations showed a clear understanding of the charges and the trial process. The court concluded that it had no concerns about Lemons' fitness. Rather, it appeared to the court that Lemons did not want to go forward with either a trial or a plea.

¶ 16    When the court returned on the record, it explained to Lemons what it had discussed with his counsel and the prosecutor. The court suggested that the State may be willing to proceed on the prior offer, and tried to admonish Lemons about the plea. In response, Lemons stated, "I'm just agreeing to sign for the four years, Your Honor." The prosecutor expressed that the State was

5

not willing to extend the previous offer. Lemons persisted that he neither wanted to enter a plea nor to go to trial, and he wanted a better lawyer. When he asked for time to hire a lawyer, the court found the request to be a delay tactic and denied the request. Because the court could not force him to take responsibility for the aggravated battery, it determined that the only way to proceed was to go to trial.

¶ 17    Lemons then indicated he was leaving the courtroom. The court refused to allow him to leave until it admonished him as to the rights he would be giving up if he left. Throughout the admonishments, Lemons interrupted the court and expressed he did not want his appointed counsel to represent him. Lemons stated he did not want to be present for his trial if the court did not remove the assistant public defender from his case. The court found Lemons "knowing[ly], understandingly and voluntarily" decided not to be present for his trial.

¶ 18    Lemons again expressed that he wanted his attorney removed from his case, and said, "If I gotta represent myself, I'll represent myself." He continued that if the court did not appoint him a new public defender, he would proceed by himself. The court explained that it could not appoint a different attorney from the public defender's office or tell the office who to assign to a case. The court then warned Lemons that he would be removed from the courtroom if he continued interrupting.

¶ 19    Although the court recognized that Lemons was not entitled to a pretrial *Krankel* hearing on his ineffective assistance of counsel allegations, it proceeded to make a record of the issues that Lemons had with counsel. The assistant public defender recounted the work she had done on the case and the general content of her conversations with Lemons. Lemons maintained that he wanted counsel off the case, and the court responded that it would not allow Lemons to represent himself because he did not understand the proceedings. The court asked him if he wanted to stay or leave,

6

indicating that Lemons had interrupted the court several times, and remarked that Lemons "can't make any decision whatsoever." After noting that Lemons had expressed his desire to leave, the court asked the deputy to remove him from the courtroom. Lemons refused to leave, and three deputies lifted him off the ground and escorted him out.

¶ 20 With Lemons no longer present, the court noted that he suffered from some mental health issues, but, based on the proffers of counsel and its own observations, it found that Lemons understood the proceedings and could participate if he so chose. The court found that Lemons' actions were meant to delay, "cause a ruckus and be difficult," and that he "doesn't want to go forward with anything." The court had "no doubt as to [Lemons'] fitness."

¶ 21 The prosecutor asked the court to explain its decision as to Lemons' oral motion to represent himself. The court explained as follows:

> "I didn't go through the normal *pro se* admonitions because throughout the proceedings it's clear that before he represents himself I have to advise him of the charges. I tried to do that and he didn't understand them. I have to explain to him sort of the process, and he doesn't understand the process, so I felt that it was somewhat futile to go through the entire list of suggested questions that a judge should go through before determining whether someone should go *pro se*, but clearly he doesn't understand the charges, he doesn't understand the process, he doesn't know what he wants to do. There's no way that he is making a voluntary, knowing and intelligent decision to represent himself and, therefore, I feel it is appropriate not to let him represent himself. With respect to hiring counsel, I told him he had the right to hire one. If he gets one free of charge, which he was allowed to do and has one, he doesn't get to pick. This is a last-minute decision. It's trial day. He's called nobody. I don't know if he has finances to call anybody, to hire anybody. Clearly, the decision—or his assertion to ask for time to hire somebody was a delay tactic and, under the law, the court has the authority to deny that motion to continue."

After the court considered the use of Lemons' prior convictions as impeachment evidence should he testify, defense counsel represented that Lemons requested a bench trial. Counsel reiterated to the court that Lemons mentioned his desire to represent himself and asked that the court admonish him if he expressed that he wished to proceed *pro se*.

7

¶ 22                          C. Lemons' Guilty Plea

¶ 23    Lemons returned to the courtroom and executed a jury trial waiver. The State extended a new offer, agreeing to a sentencing cap of six years if Lemons pled guilty to aggravated battery. Lemons indicated that he was prepared to accept this offer. When the court asked him whether he understood the aggravated battery charge, Lemons responded, "Yeah. I don't know." The court inquired into his understanding again, but Lemons repeatedly interrupted, saying he was ready and wanted to "move on with the six. *** Let's do this." When the court asked if he was willing to plead guilty to the aggravated battery charge, he replied, "Hell, yeah." Lemons expressed that he understood the statutory penalties and the penalties under the plea agreement.

¶ 24    The court admonished Lemons about his rights and asked him if he understood. Lemons stated, "I, I—yeah. Yeah. I, I—if that's what you want to hear, yeah, sure." Lemons indicated that he had no other questions and denied that anyone forced, threatened, or pressured him to plead guilty. The State then explained the terms of the plea agreement. Lemons asked if he could resolve his case that day. He stated that he agreed to be sentenced to six years, but then counteroffered a five-year sentence. Defense counsel explained to him that this was not how the plea worked. Lemons then attempted to leave the courtroom before the court accepted the plea, complaining that he would lose his "dayroom" phone time if he stayed in the courtroom. The court explained that it would not accept the plea if he left the courtroom. Lemons remained in the courtroom and indicated that he understood the possible penalties that could be imposed after a sentencing hearing.

¶ 25    The State provided a factual basis for the plea, explaining that the evidence would show that Lemons' ex-girlfriend, Denisha Williams, picked him up on January 7, 2023, and brought him to her residence to use her washer and dryer. While at her house, Lemons went through her phone

and became angry at her. An argument ensued, and Williams agreed to drive Lemons home. They continued arguing during the car ride. Lemons struck Williams in the face with his fist. When Williams felt blood on her cheek, she tried to drive to her daughter's house. Lemons continued to strike her, so Williams exited the vehicle and ran away.

¶ 26    Lemons caught up with Williams and forced her back into the car. She drove a short distance before again exiting the vehicle and attempting to run away. Lemons pursued her in her vehicle. When Williams ran off the roadway, Lemons drove the car off the road and struck her with the front of the car, causing her to fall to the ground. He then dragged her to the passenger side of the vehicle. She climbed from there into the driver's seat, locked the doors, and fled in the vehicle.

¶ 27    Williams called 911 and drove herself to the Champaign Police Department, where police officers took her statement. Officers noticed a laceration and swelling to her right cheek; they also saw tire tracks going off the roadway at the alleged scene of the incident. Officers found a red shoe belonging to Williams near a fence off the roadway.

¶ 28    While she was at the hospital, Williams received text messages from Lemons from the cell phone she kept in her upstairs bedroom. Upon receiving the texts, she contacted the police. Lemons damaged the front door to her home by kicking it in, then entered her home and took her phone. Officers arrived at Williams' house and arrested him.

¶ 29    Lemons stipulated to the factual basis. The court found the plea was made knowingly, understandingly, and voluntarily. It further found a factual basis for the plea. Thus, it accepted Lemons' open guilty plea to Class 3 aggravated battery, which was eligible for an extended term.

¶ 30                    D. *Krankel* Inquiries and Sentencing

¶ 31    Before the sentencing hearing, Lemons filed a *pro se* motion to withdraw his guilty plea, in which he claimed that he "was not represented by [his] public Deffender [*sic*] correctly." The court held a hearing at which it asked Lemons to explain why he believed counsel neglected his case. Lemons stated that counsel told him that Williams would be coming to court, that he would be found guilty, and that it was best for him to take the plea because he could receive a 10-year sentence if he went to trial. He claimed counsel "coached" him into taking a plea.

¶ 32    The court found that Lemons' ineffective assistance of counsel claim was essentially that counsel advised him it would be in his best interest to plead guilty, as a witness might come to court, and it could be worse if he went to trial and was found guilty. It further found that the allegation that counsel coached him into taking the plea was belied by the record, which showed that Lemons denied being forced, threatened, or pressured to plead guilty. The court determined that counsel merely made tactical decisions and gave him legal advice, which was appropriate. The court concluded that Lemons failed to show sufficient evidence of neglect or ineffective assistance of counsel.

¶ 33    Lemons next filed a *pro se* letter to the court, again alleging that counsel coached him into taking a plea and that he did not wish to accept the plea. He further filed a *pro se* "Interlocutory Motion to Withdraw Guilty Plea" and "Motion for Leave to Appeal." In the former motion, he claimed that defense counsel was ineffective because she never discussed strategy, refused his requests to view discovery materials, violated the code of ethics by calling him an "asshole," and failed to file requested motions. He alleged that he felt compelled to plead guilty "because counsel[']s ineffective assistance crippled [him] psychologically," which rendered him "defenseless." He indicated counsel's failure to communicate and share discovery with him left

him "like a deer caught in headlights and in no way could make a decision based on informed consent."

¶ 34   The court conducted another preliminary *Krankel* inquiry into Lemons' additional claims on April 12, 2023. See *People v. Krankel*, 102 Ill. 2d 181 (1984). The court asked him to provide as many details as possible in support of his allegations of ineffective assistance. Lemons stated that he and his counsel "cussed each other out," counsel hung up the phone on him, counsel did not read his motion for discovery, and counsel did not set up a defense for his trial date. He further claimed he was "lied to" about Williams. Counsel responded that Lemons was aware of the contents of his discovery and that she had discussed his trial with him. She denied lying to or swearing at him. The court found that there was no sufficient, credible evidence of neglect, and denied his request for a new attorney.

¶ 35   After concluding the *Krankel* inquiry, the circuit court moved on to sentencing. The court reviewed the presentence investigation report. In his statement in allocution, Lemons stated he wanted to withdraw his plea so he could prove he was innocent. The court sentenced him to six years in the Illinois Department of Corrections. It also granted the State's request that Lemons be unsuccessfully terminated from probation in Champaign County case No. 22-CF-605.

¶ 36                                    E. Posttrial Motion

¶ 37   Despite having previously denied Lemons *Krankel* relief, the circuit court vacated the appointment of the public defender's office and appointed conflict counsel in an email to the parties sent on May 4, 2023.

¶ 38   Conflict counsel filed a motion to withdraw the guilty plea or, alternatively, reduce sentence. In this motion, Lemons contended that he had provided the court with documentation of his mental disability and informed the court that he was seeing a psychiatrist and was denied

11

medication. He asserted that the court, despite being in possession of this information, erred by failing to find that he lacked the mental capacity or actual understanding of the plea. He further averred that he repeatedly told the court that he did not have faith in plea counsel and wished to proceed *pro se*, and that the court erred in denying his request for self-representation. Lemons argued that his request to proceed *pro se* should have been honored, but he also maintained that his responses to questioning during the actual plea hearing "seemed odd and inappropriate[,] indicating a lack of understanding." Lemons alleged that his plea was not knowingly and voluntarily made because he was "under stress and upset[,] *** confused and shocked at the time of the plea."

¶ 39    At the hearing on his motion, Lemons testified that he had a learning disability and ADHD. Although he was prescribed medication for his mental disabilities, he was not given that medication while incarcerated. Lemons also testified that, while incarcerated, he was prescribed Zoloft for depression. He maintained that he did not understand the words the court used and claimed the court was trying to "force" him to understand. Lemons was unable to provide specific examples of any words used that he did not understand, and he conceded that he understood what it meant to hit someone. He testified that he wanted to go to trial because he was innocent and knew he could "beat the case."

¶ 40    Lemons further stated that he asked to proceed *pro se*, but the court did not allow him to do so. He claimed that plea counsel was working with the prosecution, and complained that she did not argue anything he wanted argued, was not agreeable with him, failed to contact a witness he wanted contacted, and told him he was stupid for wanting to go to trial. Lemons testified that his counsel failed to contact the victim, Williams, before trial and failed to call her as a witness.

12

He claimed that Williams had told him she would not be coming to court. Lemons maintained that he was willing to go to a jury trial *pro se*.

¶ 41    He also testified that he entered a guilty plea on February 28, 2023, and he believed that if he had gone to trial with plea counsel, he would receive a harsher sentence. He claimed that, because counsel was not cooperating with him and did not have a defense prepared, his only option was to plead guilty. Lemons said he "felt cheated" when the trial judge removed him from the courtroom and would not allow him to speak on his own behalf. Lemons denied that he stood up and attempted to leave the courtroom himself, or that he was concerned about losing his "dayroom" phone time if he remained in the courtroom.

¶ 42    Lemons admitted he understood the full nature of the plea but was confused because he believed that everyone was working against him. He stated that he would have preferred to proceed without an attorney than with plea counsel. Lemons conceded that he tried to negotiate a plea with the prosecution on February 28, 2023, but he believed he tried to get a jury trial that day. Conflict counsel maintained that Lemons clearly and unequivocally asked to proceed *pro se*, and thus the circuit court erred in denying his request, even if he asked to represent himself for the wrong reasons.

¶ 43    The State responded that Lemons manufactured confusion in his own case and engaged in disruptive behavior because he was upset that the four-year offer had been revoked. The State maintained that Lemons' mental disabilities did not create a *bona fide* doubt as to his fitness. It further asserted that Lemons fabricated his claim that he did not understand and created a situation to derail his trial, because Williams was actually present and ready to testify that day.

¶ 44    The circuit court agreed that Lemons was intentionally sowing confusion at his plea hearing and described the February 28, 2023, proceeding as a "colossal disaster." At various points,

13

Lemons expressed that he wanted a plea, a jury trial, a bench trial, to represent himself, to walk out of the proceedings, and to hire a new attorney. The court found his request for self-representation to be a delay tactic, stating, "It was clear that he has a right to represent himself, but not if it's to delay the proceedings, and that's *** exactly what was happening." The court further stated that it had inquired into any mental health or fitness issues, and both plea counsel and the prosecutor agreed that there were none. The court noted its patience with Lemons and the efforts it had made to ensure that he understood the proceedings, but found that Lemons did whatever he could to prevent the proceedings from happening.

¶ 45    The court recognized many of the complaints about plea counsel were litigated during the two *Krankel* inquiries, and there was no specific evidence presented that his former counsel had been working against him. The court found that Lemons understood his plea, and entered the plea voluntarily. Specifically, the court remarked that Lemons wanted a better deal, then wanted to represent himself, then wanted a bench trial, then "[w]hen everything hit the fan, essentially, he caved and said I'll take the plea." The court denied Lemons' postjudgment motion, and this appeal followed.

¶ 46                              II. ANALYSIS

¶ 47    On appeal, Lemons argues that the court erred in denying his request to proceed *pro se* because (1) he clearly and unequivocally expressed his desire to represent himself, (2) he was fit to waive counsel, (3) his request was timely, and (4) his decorum in court was appropriate. He further contends that the court's structural error rendered his subsequent guilty plea involuntary.

¶ 48    The State responds that Lemons has waived any challenges to nonjurisdictional defects in his guilty plea by voluntarily pleading guilty, and he failed to establish any reversible structural error in the circuit court's denial of his request to proceed *pro se*. It further argues that the court

14

did not abuse its discretion in denying Lemons' request, as it based its decision on a finding that Lemons was intentionally obstructing and delaying the proceedings because he was dissatisfied with the events.

¶ 49                           A. Standard of Review

¶ 50    Our courts recognize that a defendant has a constitutional right to represent himself. *People v. Baez*, 241 Ill. 2d 44, 115 (2011) (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)). In order to exercise this right, the defendant "must knowingly and intelligently relinquish his right to counsel." *Id.* at 115-16. Our supreme court has emphasized that waiver of counsel cannot be ambiguous, but rather must be "clear and unequivocal." *Id.* at 116; see also *People v. Perkins*, 2018 IL App (1st) 133981, ¶ 41. The purpose of this requirement is to "(1) prevent the defendant from appealing the denial of his right to self-representation or the denial of his right to counsel, and (2) prevent the defendant from manipulating or abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se*." *People v. Mayo*, 198 Ill. 2d 530, 538 (2002).

¶ 51    We review the circuit court's determination as to whether a defendant's assertion of his desire to proceed *pro se* was clear and unequivocal for abuse of discretion. *Perkins*, 2018 IL App (1st) 133981, ¶ 44. This is the most deferential standard of review, and our mere disagreement with the circuit court's decision would be insufficient to support finding an abuse of discretion. *Campbell v. Autenrieb*, 2018 IL App (5th) 170148, ¶ 26. An abuse of discretion occurs "only where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *Perkins*, 2018 IL App (1st) 133981, ¶ 44.

15

¶ 52                    B. Whether Lemons Waived His Claim on Appeal

¶ 53    Before we review the merits of Lemons' claim on appeal, we turn to the State's argument that he waived this claim by voluntarily pleading guilty. Our supreme court has held that a defendant who enters a plea agreement forecloses any claim of error. *People v. Jones*, 2021 IL 126432, ¶ 20. " 'It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*.' " (Emphasis in original.) *Id.* (quoting *People v. Sophanavong*, 2020 IL 124337, ¶ 33). Principles of waiver apply here because a plea agreement is fundamentally a contract. *Id.* ¶ 21; *People v. Absher*, 242 Ill. 2d 77, 78 (2011).

¶ 54    In the present matter, Lemons pled guilty to aggravated battery, and the circuit court found that the plea agreement was knowing and voluntary. Lemons disputes this finding. The circuit court's determination whether a guilty plea was knowing and voluntary is reviewed for abuse of discretion. *People v. Hughes*, 2012 IL 112817, ¶ 32.

¶ 55    Lemons does not argue, nor does the record support, that he was not properly advised of the direct consequences of a guilty plea. See *id.* ¶ 35. He acknowledges that our courts have not addressed the specific question of whether the denial of a defendant's request to proceed *pro se* can render a guilty plea involuntary. See *People v. Rainey*, 2019 IL App (1st) 160187. In *Rainey*, the defendant pled guilty after the circuit court denied his third request to waive counsel. *Id.* ¶ 26. On appeal, he argued that the deprivation of his sixth-amendment right of self-representation rendered his guilty pleas involuntary, because the pleas were coerced. *Id.* The First District noted that this was a matter of first impression, and the federal courts of appeal were split on the issue. *Id.* ¶¶ 27-29. The court ultimately declined to answer this question, as it found that the lower court properly denied the defendant's request. *Id.* ¶ 31. Lemons cites to no subsequent authority, nor do we find any such authority, that has resolved this question for our courts.

16

¶ 56    Lemons instead argues that by denying him the right to proceed *pro se*, the circuit court forced him into the "impossible position" of having to continue under the deficient representation of defense counsel. He contends that he pled guilty only to avoid going to trial with an attorney who he did not believe would adequately represent him and risk receiving a lengthy sentence. He further claims that his plea was involuntary because it was the direct result of the court's structural error, requiring automatic reversal, of denying him the right to self-representation. See *People v. Fisher*, 407 Ill. App. 3d 585, 591 (2011).

¶ 57    Lemons cites to the decision in *People v. Moone*, 45 Ill. 2d 488, 490-91 (1970), for the position that entering a plea without the effective assistance of counsel may render the plea involuntary. However, that case is distinguishable. In *Moone*, the defendant's attorney was not ready for trial and did not wish to try the case, so he requested a continuance in order for the defendant to seek other counsel. *Id.* at 491. The defendant, who had wanted to go to trial, entered a plea of guilty after the trial court denied his attorney's request for a continuance. *Id.* The supreme court found that when the defendant pled guilty, he "made it clear that he did so because he was without representation." *Id.* The court concluded that he was without the effective assistance of counsel at the time he entered his guilty plea, and therefore, he should have been allowed to withdraw it. *Id.*

¶ 58    Here, by contrast, the record shows that Lemons repeatedly changed positions as to how he wished to proceed—trial by jury, bench trial, or plea agreement; *pro se* or with new counsel. His appointed counsel, unlike the attorney in *Moone*, did not exhibit any unwillingness or unpreparedness to represent Lemons under any of these options. Instead, as the circuit court found, the problem was Lemons' intentional delaying and sowing confusion, including by "waffl[ing] between" the aforementioned options.

¶ 59 Lemons also cites to *People v. Algee*, 228 Ill. App. 3d 401 (1992), for the same proposition. In that case, the defendant alleged that his guilty plea was involuntary because it was not given with the assistance of competent counsel, where defense counsel "refused to prepare a defense, refused to give defendant all discovery materials supplied by the State, refused to accept many of defendant's phone calls, refused to withdraw as counsel when requested, failed to object to inappropriate conduct by the State's Attorney toward defendant, and coerced defendant's plea by relating misinformation and/or threats designed to encourage defendant to plead guilty." *Id.* at 404. The appellate court found that counsel's conduct as a whole amounted to ineffective assistance, which rendered the defendant's plea involuntary. *Id.*

¶ 60 There are no such comparable facts in the present matter. Here, the circuit court held two hearings into Lemons' numerous allegations against counsel, and determined that he failed to sufficiently show that he received ineffective assistance of counsel. The record also shows that counsel was able to go to trial if Lemons so wished—it was Lemons' own indecision that stood in the way of a trial, not counsel's unwillingness or unpreparedness, as in *Moone*. While we are not yet reviewing the merits of Lemons' claims, we note for now that the circuit court, as the court most familiar with the proceedings at issue, is "the most effective arbiter between patently frivolous claims and those showing possible neglect." *People v. Roddis*, 2020 IL 124352, ¶ 56.

¶ 61 Furthermore, even if Lemons felt that he would be submitting to an unconstitutional trial had he proceeded to trial with his appointed counsel, he was not forced to plead guilty to avoid the consequences of an unconstitutional proceeding—he could have sought a remedy for any constitutional violations at trial on appeal. Thus, we find Lemons' contention that he was coerced into pleading guilty to lack any factual basis in the record.

18

¶ 62    We therefore conclude that the circuit court did not abuse its discretion in determining that Lemons' plea was knowing and voluntary. Therefore, for the reasons mentioned above, and further articulated below, we could end our review here and find that Lemons has waived his argument on appeal by voluntarily pleading guilty. However, as we will explain in the following sections, even if we find that he has not forfeited this claim, we would nevertheless affirm the judgment of the circuit court.

¶ 63                C. Clear and Unequivocal Waiver of the Right to Counsel

¶ 64    The requirement that a defendant's waiver of his right to counsel be clear and unequivocal "prevents a defendant from weaponizing his sixth-amendment rights on appeal." *Rainey*, 2019 IL App (1st) 160187, ¶ 39. In deciding whether a defendant clearly and unequivocally executed this waiver, the court "must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation." *Baez*, 241 Ill. 2d at 116. It must further " 'indulge in every reasonable presumption against waiver' " of the right to counsel. *Id.* (quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977)). The determination of whether a defendant has knowingly and intelligently waived his right to counsel must depend upon the particular facts and circumstances of the individual case, including the background, experience, and conduct of the accused. *Id.*; *People v. Lesley*, 2018 IL 122100, ¶ 51.

¶ 65    Lemons points to his pre-plea statement before the court, "I would like [defense counsel] removed from *** my case. If I gotta represent myself, I'll represent myself," as a clear and unequivocal expression of waiver. He also notes his later comment, "I'll proceed by myself, if you don't want to appoint me another public defender," as well as his assertion, "I would like to get [defense counsel] off my case. If I have to represent myself, I'll do that." He further argues that the circuit court understood his request to represent himself, because it responded, "I'm not gonna

19

let you represent yourself because you don't understand the proceedings." See *Rainey*, 2019 IL App (1st) 160187, ¶ 43 (finding that defendant's request for self-representation was clear because it was clear to the judge, as she took his statement to be a request to proceed *pro se*).

¶ 66    Lemons adds that he also requested to represent himself when he filed his motion to withdraw his guilty plea, and the fact that this request came after asking the court to appoint new counsel does not render it unclear or unequivocal. See *id.* ¶ 67 ("a request for self-representation is not unclear or equivocal merely because it was a fallback to the defendant's first but unavailable choice of private counsel"). He further denies ever vacillating on his desire to represent himself, claiming that he continuously asserted his dissatisfaction with defense counsel throughout the proceedings, and only submitted to her representation because he has no other option.

¶ 67    The State responds that Lemons did not clearly and unequivocally waive counsel, because his statements were conditional and expressions of frustration with his appointed counsel. It argues that, when viewed in the full context of the proceedings, Lemons' overall conduct demonstrated a conditional request as part of his obstructionist behavior to delay his trial, particularly when his own actions cost him the opportunity to accept a four-year plea agreement. The State notes that defense counsel originally informed the court that Lemons would plead guilty, and the agreement was that he would receive a four-year sentence in exchange for a guilty plea to aggravated battery. The court began to admonish Lemons pursuant to Illinois Supreme Court Rule 402(a), but Lemons claimed that he had a mental disability and did not understand the court. Because he stated that he did not understand, the court did not accept the plea, and instead set the matter for jury trial the next day.

¶ 68    On February 28, 2023, defense counsel informed the court that Lemons wanted a bench trial. When the court began to admonish him about the differences between a bench and jury trial,

Lemons again claimed that he did not understand anything. Throughout the proceedings, he continued to express that he did not understand why he could not proceed on the plea agreement from the day prior, despite the court's explanation that it could not accept his plea if he did not understand the charges against him. The State did not reopen the four-year offer.

¶ 69    Several times throughout the proceedings, the court read the charges against him and asked if he understood. When Lemons stated that he did not, the court rephrased the charges in simpler terms. Lemons maintained his lack of understanding that he hit Williams and caused her bodily harm. The court told him that it would not force him to plead guilty. Lemons expressed that he did not want a jury trial, and refused to admit that he hit Williams with a car. After this exchange, the court informed Lemons that he would have to go to trial.

¶ 70    The State contends that it was specifically after being told he would be going to trial that Lemons began complaining about his appointed counsel, claiming that she did not ask if he wanted a witness called or whether he had any text messages or other evidence to help his case. The State explains that Lemons began to complain about counsel and asked the court to remove her and appoint him a new attorney because, as he stated, "I don't want to go to trial with her." The court told him that it would not appoint someone else. Lemons then stated that he neither wanted to enter a plea nor go to trial, and he wanted time to hire a new attorney. The court denied the request, finding it to be a delay tactic, and stated that since Lemons refused to decide between a plea and a trial, they would proceed to trial.

¶ 71    Lemons then attempted to leave the courtroom, which the court did not allow him to do until it had explained to him the rights he would be giving up if he did so. Throughout the admonishments, Lemons interrupted the court and continued to complain about defense counsel. He ultimately decided not to leave, but maintained that he wanted to proceed without his appointed

21

counsel, whether that be with new counsel or on his own. The court reminded him that it could not appoint him new counsel or direct the public defender's office to assign him a new attorney. The court also admonished him that he would be removed from the courtroom if he continued interrupting.

¶ 72 The court also allowed defense counsel to respond to Lemons' complaints regarding her representation, and counsel explained the work she had done on the case and her communications with Lemons. Lemons again asked to have her taken off the case, adding, "If I have to represent myself, I'll do that." The court denied his request once more, explaining that it would not allow him to represent himself because he did not understand the proceedings. The court then had Lemons removed from the courtroom, stating that Lemons kept interrupting, had said he wanted to leave, and could not "make any decision whatsoever." After conducting an inquiry into Lemons' mental health and fitness, the court found that, based on the proffers of defense counsel and the prosecutor, as well as the court's own observations, Lemons understood what was going on in the proceedings and could participate if he so chose.

¶ 73 We find that the State's summary of the relevant points in the proceedings is consistent with and accurate to the record, and to the findings of the circuit court. The State does not dispute that Lemons raised complaints about defense counsel multiple times before pleading guilty. However, it argues that, to the extent that he raised any specific issues with her performance, they all pertained to matters of trial strategy. See *People v. Jackson*, 2020 IL 124112, ¶ 97 (court may deny *pro se* ineffective assistance of counsel claim if it pertains only to matters of trial strategy); see also *People v. Smith*, 195 Ill. 2d 179, 188 (2000) (defendant claiming ineffective assistance must overcome the strong presumption that counsel's actions resulted from sound trial strategy).

22

The decisions of whether to call certain witnesses and which defenses to pursue are matters of trial strategy. *People v. Patterson*, 2022 IL App (1st) 182542, ¶ 65.

¶ 74    The State further concedes that the fact that Lemons expressed he would represent himself if the court did not appoint new counsel does not necessarily preclude his request from being clear and unequivocal. See *Rainey*, 2019 IL App (1st) 160187, ¶ 67. However, in light of the context summarized above, the State argues that Lemons' statements about wishing counsel to be removed were statements of frustration with counsel and efforts to delay the proceedings, rather than expressions of a clear and unequivocal waiver of his right to counsel. Furthermore, Lemons' vacillating between asking for a new, "better" attorney and asserting that he would represent himself if he had to did not demonstrate clear and unequivocal waiver. See *People v. Rasho*, 398 Ill. App. 3d 1035, 1041-42 (2010) (where defendant filed motion asking to proceed *pro se* or receive new counsel, after previously requesting new counsel, court declined to find clear and unequivocal waiver); *People v. Rohlfs*, 368 Ill. App. 3d 540, 545 (2006) (finding no clear and unequivocal waiver where defendant vacillated between requesting new counsel, seeking to represent himself after the court denied his request, and then abandoning the latter effort).

¶ 75    We agree that Lemons' indecision and, as the circuit court described it, waffling indicated a lack of clear and unequivocal waiver of counsel. It was clear that Lemons wanted different, "better" counsel, and he voiced his intent to proceed without counsel only if the court did not appoint him a new attorney or provide him time to obtain one. Furthermore, as noted above, when Lemons raised specific issues he had with counsel's representation, he did not point to any valid action or inaction that would constitute ineffective assistance, as the court determined in the two *Krankel* inquiries it held into Lemons' claims. He pointed to matters of trial strategy, which are generally immune from ineffective assistance claims, and the circuit court determined that

23

Lemons' complaints touched on counsel's tactical decisions and did not warrant appointing new counsel.

¶ 76 We note that if Lemons were to succeed on his claims of ineffective assistance of counsel based on matters of trial strategy, he would have had to show that the attorney's actions were "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82. There is nothing in the record to support such a finding. Indeed, counsel's actions were far from those of the attorney at issue in *Algee*, who, *inter alia*, refused to communicate with the defendant, failed to prepare a defense, and misinformed him about his potential sentence in convincing him to plead guilty. 228 Ill. App. 3d at 404.

¶ 77 Additionally, the record strongly supports the circuit court's finding that Lemons' behavior in court—such as repeatedly interrupting, refusing to make a decision on how to proceed, complaining about appointed counsel and asking for new counsel, claiming not to understand the court, and attempting to leave the courtroom—was intended to delay and obstruct the proceedings. We also consider Lemons' behavior alongside the presumption against waiver of counsel. See *Baez*, 241 Ill. 2d at 116. Considering that part of the purpose of requiring a defendant's waiver of counsel to be clear and unequivocal is to prevent the defendant from manipulating or abusing the system, we find that the circuit court did not abuse its discretion by not allowing Lemons to proceed *pro se*, as it was reasonable to conclude that his complaints about appointed counsel were merely gamesmanship. See *Mayo*, 198 Ill. 2d at 538.

¶ 78 D. Lemons' Understanding of the Proceedings

¶ 79 Lemons next argues that the circuit court improperly denied his request to represent himself by basing it on his lack of legal knowledge and ability. He notes that the court stated, "I'm not

gonna let you represent yourself because you don't understand the proceedings." He also contends that the court erred in failing to admonish him under Rule 401(a), and instead explaining that it would be "futile" to do so because "clearly he doesn't understand the charges, he doesn't understand the process, he doesn't know what he wants to do." Ill. S. Ct. R. 401(a) (eff. July 1, 1984). The court concluded that there was "no way that he is making a voluntary, knowing and intelligent decision to represent himself."

¶ 80      A criminal defendant's right to self-representation is not absolute. A trial court "may deny a defendant's request for self-representation under certain circumstances, including where a defendant's lack of civility and decorum would result in an abuse of the dignity of the courtroom [citation], where a defendant abuses the right to waive counsel as a tactic to delay or disrupt proceedings [citation], or where a defendant suffers from a severe mental illness and thus is not competent to conduct trial proceedings without counsel [citation]." *People v. Rodriguez-Aranda*, 2022 IL App (2d) 200715, ¶ 33.

¶ 81      However, a "defendant's lack of legal knowledge and ability is no basis for denying a defendant's request for self-representation." *Id.* Furthermore, even though the court "may consider a defendant's decision to represent himself unwise," it must accept this decision if it is freely, knowingly, and intelligently made. *Baez*, 241 Ill. 2d at 116. Lemons contends that the circuit court did not afford him the opportunity to make a knowing, intelligent waiver by declining to inform him of the points required under Rule 401(a), after specifically finding that he was mentally fit to understand the proceedings.

¶ 82      Lemons notes that the circuit court held an off-the-record discussion with counsels for the defense and the State to discuss Lemons' fitness, after he repeatedly expressed that he did not understand anything that was being said during the proceedings, including the nature of the charges

25

against him. Defense counsel stated on the record, "There is a hundred percent no fitness issue with Mr. Lemons." Counsel for the State informed the court that the State was "not concerned about Mr. Lemons' fitness," and the prosecutor believed that Lemons was feigning a lack of understanding to raise doubt about his fitness. The court determined that, based on counsels' proffers and its own observations, Lemons was able to understand what was going on and was fit to participate if he so chose. The court further found that by claiming not to understand what was being said, Lemons was merely being difficult and contrarian in order to delay the proceedings.

¶ 83    Lemons also adds that the court accepted his guilty plea, which it had originally been unwilling to do if it believed that he was not competent to enter a knowing and intelligent waiver of his trial rights. See *People v. Mahaffey*, 166 Ill. 2d 1, 19 (1995) ("Competence to waive counsel is measured by the same standard as competence to stand trial [citation], and the defendant's fitness for trial therefore also established his fitness to waive counsel."). The circuit court stated, "The plea was knowing, intelligently, and voluntarily made. I know that words on the paper may seem as though he didn't understand, but he knew exactly what was going on."

¶ 84    We first note that Lemons admits he claimed not to understand anything during the proceedings, but now asks us to disbelieve his firm, unwavering position before the circuit court and accept the court's finding—supported by his former counsel and the prosecutor—that he was, effectively, lying or exaggerating. Indeed, the record shows that, while he was making his request to the court to proceed *pro se*, Lemons maintained that he did not understand the charges against him, nor anything else said in court. Lemons' admission on appeal only further supports the circuit court's finding that his attempt to remove defense counsel was part of his effort to delay and obstruct the proceedings after he lost the opportunity to accept the State's four-year plea offer.

26

¶ 85    Secondly, Lemons' point about the court's failure to admonish him pursuant to Rule 401(a) is irrelevant under the facts of this case. These admonishments are required in order for a court to accept a defendant's waiver of his right to counsel. Ill. S. Ct. R. 401(a) (eff. July 1, 1984) ("The court shall not permit a waiver of counsel *** without first *** informing [defendant] of and determining that he understands the following."). Here, the court determined—for reasons unrelated to Lemons' mental fitness and ability to understand the rights he was giving up—that it was denying his request to represent himself. It did not accept his waiver, and thus was not required to provide him with the Rule 401(a) admonishments.

¶ 86    While Lemons is correct in identifying that a defendant's lack of legal knowledge and ability is not a proper basis for denying his request to proceed *pro se*, he has not cited to any authority that states that, conversely, a court *must* accept a defendant's waiver if it finds that there is nothing impeding his ability to understand the proceedings or the rights he is waiving. Rather, it is proper for a court to reject waiver of counsel if, for example, "defendant's lack of civility and decorum would result in an abuse of the dignity of the courtroom" or the "defendant abuses the right to waive counsel as a tactic to delay or disrupt proceedings." *Rodriguez-Aranda*, 2022 IL App (2d) 200715, ¶ 33.

¶ 87    It is true that the circuit court stated that it would not provide the *pro se* admonitions and accept his waiver as knowing, intelligent, and voluntary because Lemons claimed not to understand the charges and the process. The court provided the same reason for why it initially stated it could not accept a guilty plea from Lemons. However, after conducting an inquiry into his fitness and ability to understand what was going on, the court determined that it had "no doubt as to [Lemons'] fitness." It accepted Lemons' guilty plea. While Lemons now argues on appeal

27

that his plea was not knowing and voluntary, he does not base this claim on the alleged fact that he lacked the requisite understanding to enter the plea.

¶ 88    Therefore, we find that the circuit court did not abuse its discretion in denying his request to represent himself, based on any argument relating to his mental fitness or understanding.

¶ 89                    E. Timeliness of Lemons' Request

¶ 90    Lemons next argues that the circuit court erred in disallowing him from representing himself because his request was timely. A request to proceed *pro se* "may reasonably be rejected where it 'come[s] so late in the proceedings that to grant it would be disruptive of the orderly schedule of proceedings' or where a defendant 'engages in serious and obstructionist misconduct.' " *People v. Hunt*, 2016 IL App (1st) 132979, ¶ 18 (quoting *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 24). A request to proceed *pro se* that is "not accompanied by a request for additional time to prepare, 'should generally be viewed as timely as long as it is made before trial.' " *Id.* (quoting *People v. Ward*, 208 Ill. App. 3d 1073, 1084 (1991)).

¶ 91    Our supreme court has also stated that the trial court has discretion to deny a defendant's request to represent himself once meaningful proceedings have begun in the case. *People v. Burton*, 184 Ill. 2d 1, 24-25 (1998). The court in *Burton* held that, even if the defendant's statements were clear and unequivocal, the circuit court did not abuse its discretion in denying his request for self-representation because it was untimely. *Id.* The court noted that his statements came after the entry of a guilty plea and after the defendant was found eligible for the death penalty, that his request was made during sentencing, and that his counsel had already had "intimate and lengthy involvement" in the case by the time the defendant made his request. *Id.* at 25.

¶ 92    Lemons notes that while courts differ on the timing of the cutoff point, the requirement that a request for self-representation be timely exists in order to avoid purposeful delay. See, *e.g.*,

28

*People v. Woodruff*, 85 Ill. App. 3d 654, 660 (1980) ("A defendant cannot await the eve of trial and then, hoping for a continuance, announce that he has decided to rely upon his skills rather than counsel's in presenting his defense. Such machinations cannot be used to thwart the administration of justice."); see also *Rasho*, 398 Ill. App. 3d at 1041-42 (trial court did not abuse its discretion in finding defendant's request to proceed *pro se*, made on the day of trial and accompanied by an implicit motion for a continuance, to be an untimely delay tactic and denying the request).

¶ 93     Lemons further acknowledges that he made his request for self-representation on the first day of trial, before jury selection. However, he contends that we should not view this case in the same manner as the above-cited authority, because delay *per se* is "not a sufficient ground for denying a defendant's constitutional right of self-representation. Any motion to proceed *pro se* that is made on the morning of trial is likely to cause delay; a defendant may nonetheless have *bona fide* reasons for not asserting his right until that time." *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir. 1982). Lemons thus asks us to examine whether his actions prior to his request indicate that he was causing purposeful delay and whether he had the opportunity to make his request earlier in the proceedings. *Id.* at 784-85.

¶ 94     We first note that Lemons relies on authority from the Ninth Circuit, which is not binding on this court, for his argument that we must view his request in light of his behavior throughout the proceedings in order to determine whether it was timely or whether it was meant to cause delay. Regardless, we have extensively discussed above why the circuit court found that Lemons' request to proceed *pro se* to be part of a pattern of obstructive behavior intended to delay the proceedings.

¶ 95     Secondly, the circuit court did not make any explicit findings regarding the timeliness of Lemons' request, nor does Lemons provide any authority stating that a court must allow any request to proceed *pro se* if it can be shown to be timely. Therefore, even if he could distinguish

29

the facts of his case from *Woodruff*, *Rasho*, *et al.*, this does not address the circuit court's specific findings that Lemons was attempting to obstruct and delay the proceedings. Additionally, Lemons specifically did ask the court for additional time to find a new lawyer, which the court found to be a delay tactic and denied, similar to the request for a continuance to prepare for trial *pro se* in *Rasho*.

¶ 96 In brief, we restate that we defer to the findings of the circuit court. We further conclude that, based on the record on appeal and its descriptions of Lemons' behavior during the proceedings, which we have repeatedly discussed above, the circuit court did not abuse its discretion in denying his request for self-representation.

¶ 97 F. Lemons' Conduct During the Proceedings

¶ 98 "A defendant's lack of civility and decorum *** is a valid basis for denying his request for self-representation," and a trial court may therefore deny such request if the defendant " 'deliberately engages in serious and obstructionist misconduct.' " *Rainey*, 2019 IL App (1st) 160187, ¶ 74 (quoting *Faretta*, 422 U.S. at 834 n.46); see also *Rodriguez-Aranda*, 2022 IL App (2d) 200715, ¶ 33 (request for self-representation may be denied where defendant's "lack of civility and decorum would result in an abuse of the dignity of the courtroom"). Lemons' next argument is that the court erred in denying his request to proceed *pro se* based on its finding that his behavior was part of an effort to delay and obstruct the proceedings.

¶ 99 Lemons contends that his actions did not rise to the extreme degree of misconduct that is required to form a valid basis for a court's denial of a request for self-representation. See *People v. Sheley*, 2012 IL App (3d) 090933, ¶ 27 (noting that although defendant's outburst in the courtroom was inappropriate, it was an isolated incident that happened after the court's adverse rulings, and was the only evidence of his lack of control). He argues that his case is distinguishable

30

from *Rainey*, where the circuit court denied the defendant's third request to proceed *pro se* after finding that he had engaged in serious and obstructionist misconduct at both hearings at which he had any substantive responsibility for conducting his own defense. *Rainey*, 2019 IL App (1st) 160187, ¶ 80. The defendant's misconduct included incessant swearing, deeply offensive slurs directed at the judge, doing "whatever he could to stonewall" the judge's trial preparation efforts, and leaving the courtroom and requiring the judge to have him shackled at the next hearing. *Id.* ¶¶ 81-87. The *Rainey* court stated that the defendant "made it utterly clear that he had no intention of cooperating with the proceedings or showing any modicum of respect for the court," and noted that there were "far too many examples of defendant's disruptive and disrespectful conduct" at the hearings to list them all. *Id.* ¶ 84.

¶ 100 Lemons admits that his behavior during the proceedings was "imperfect," including swearing in court, frequently interrupting the judge, refusing to decide whether he wanted to plead guilty or go to trial, and refusing to leave the courtroom when asked. However, he contends that this did not rise to the level of misconduct that would warrant denying him his right of self-representation. He cites again to *Rainey* that forcing him to proceed with counsel he did not want was an extreme measure that the First District noted should only be done for the most egregious behavior, stating:

> "Forfeiture is strong medicine when the right to be nixed is a fundamental one, guaranteed by the sixth amendment. And so a trial judge must be prepared to endure at least some irritating, foolish, unprofessional, or occasionally wacky behavior from a *pro se* defendant. [Citation.] A rough-around-the-edges demeanor, not at all unusual for a *pro se* defendant, will not justify a denial of this right; some unprofessionalism must be tolerated unless the defendant's conduct is so defiant, disruptive, or disrespectful that it threaten[s] to forestall the proceedings." (Internal quotation marks omitted.) *Id.* ¶ 76.

¶ 101 We disagree with Lemons that his behavior was not so extreme and egregious that the circuit court abused its discretion in finding that his request was part of a pattern of behavior meant

31

to obstruct and delay the proceedings. His interruptions, to which he admits, were so frequent and disruptive to the proceedings that the court had him removed from the courtroom. Lemons further admits that he refused to leave the courtroom when the judge ordered him to do so, which resulted in three deputies having to forcibly lift him off the floor and escort him out. As the State notes, the court in *Rainey* recognized that "[t]he kind of misconduct that would justify imposing counsel on an unwilling defendant is, in essentials, the same kind of misconduct that would justify excluding him from his trial." *Id.* ¶ 75. Here, Lemons' courtroom misconduct did result in his exclusion from the trial proceedings, and, as we have already found in this order, we agree with the circuit court that the same conduct was a proper basis for the rejection of his request to proceed *pro se*.

¶ 102   Without repeating any previously-discussed points, we also note that the circuit court determined not once but twice that any ineffective assistance of counsel claims that Lemons had were meritless, and therefore, the court did not force Lemons to proceed with an attorney who could not effectively represent him. Additionally, the untimeliness of Lemons' request further supports the circuit court's finding that it was made as part of his obstructionist efforts, particularly as the court noted that Lemons was frustrated over losing the opportunity to accept the four-year plea offer. Therefore, the court properly denied Lemons' request for self-representation based on his misconduct during the proceedings.

¶ 103                                         III. CONCLUSION

¶ 104   For the reasons stated, the circuit court did not err in accepting Lemons' guilty plea and denying his request to represent himself. The judgment of the circuit court is affirmed.


¶ 105   Affirmed.