2026 IL App (2d) 250079-U
No. 2-25-0079
Order filed April 16, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

DARNISSA T. GRAY, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Alice C. Tracy and Donald M. Tegeler Jr., Judges, Presiding.
No. 18-CF-558

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in denying defendant's motion to suppress or her motion for self-representation.

¶ 2   Defendant, Darnissa Gray, was convicted of two counts of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(G), (d)(2)(B) (West 2016)) and a single count each of driving while license revoked (*id.* §§ 6-303(a), 303(d)(1)), obstructing a peace officer (720 ILCS 5/31-1(a) (West 2016)), and obstructing identification (*id.* § 31-4.5(a)). On appeal, defendant argues that the trial court erred in denying her motion to suppress and her motion for self-representation. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On March 20, 2018, defendant was the subject of a traffic stop. When the officer questioned defendant, she told him that she did not have her driver's license and provided a false name and date of birth. The officer detected a strong odor of alcohol on defendant's breath and observed that her eyes were glassy. While the officer was in his squad car verifying defendant's information, defendant exited her vehicle with her purse and fled on foot. The officer pursued and apprehended her after she ignored commands to stop. A search of defendant's purse revealed an identification card bearing the name of Darnissa Gray and a photograph matching defendant. At the police station, defendant refused to submit to a breath test.

¶ 5      Following multiple continuances, defendant was indicted on March 13, 2019, on the five counts for which she was ultimately convicted. The aggravated DUI counts alleged prior qualifying offenses and that defendant's driving privileges were revoked or suspended at the time of the offense.

¶ 6      Defendant was arraigned in October 2019 and pleaded not guilty. At a March 5, 2020, hearing, defendant was represented by private counsel and given a trial date of July 6, 2020. During that hearing, defendant questioned whether the trial court (Judge Alice C. Tracy) honored its oath to uphold the Constitution and asserted legal theories that driving was a fundamental right, and that speeding, running stop signs, and traveling without a license or registration were not arrestable offenses. The July 2020 trial date was later continued due to the COVID-19 pandemic and reset for August 3, 2020. Defendant failed to appear on that date, and a warrant was issued. Additionally, the trial court granted private counsel's motion to withdraw.

¶ 7      On December 10, 2020, defendant appeared via videoconference and introduced herself as "Daanya El *in propria persona*." She explained that her "ex relation, slash, straw name is Darnissa

Gray." Defendant stated that she filed a delegation of authority, affidavit of fact, and notice of default judgment, and asked if there were any rebuttals. When the trial court asked whether she had a motion to recall a warrant, defendant responded by asking the court whether it was an "Article III, Section 2 Judge." When the trial court refused to answer defendant's questions as they were not relevant, defendant argued that they were relevant. The trial court asked defendant three times whether she planned to hire an attorney, and defendant repeatedly stated she filed a delegation of authority and jurisdiction could not be presumed, and questioned whether any rebuttals were filed. Thereafter, the trial court appointed a public defender, but defendant refused to speak with her. The trial court then continued the matter for an in-person hearing. When the trial court asked defendant if she had any questions about the next hearing date, defendant questioned whether the court had authority to issue a warrant or if she was kidnapped, and stated that if there was no rebuttal she was moving for the case to be dismissed.

¶ 8       Defendant's disruptive conduct continued at subsequent proceedings. At the outset of a February 10, 2021, hearing, the bailiff informed the trial court that he was not sure if defendant's phone was on. The trial court instructed defendant to give her phone to the clerk. Defendant stated, "I do know I have my first amendment [rights]. And are you guys denying me my constitutional freedoms right now?" Defendant continued to interrupt the proceedings, challenge the trial court's authority, and advance irrelevant arguments. As a result, the trial court noted for the record that defendant's conduct interfered with courtroom decorum, and the public defender requested a fitness evaluation. Defendant engaged in similar conduct at later hearings, including a videoconference hearing on April 1, 2021, at which she was removed from the proceedings due to her continued interruptions.

¶ 9    At an April 15, 2021, videoconference hearing, defendant appeared under the name "Dee Queen" and provided multiple alternative identifiers when questioned by the trial court. Defendant asserted that she was not represented by the public defender, repeatedly interrupted the proceedings, invoked purported constitutional rights, and addressed the trial court by its first name. Due to defendant's continued interruptions, the trial court removed her from the hearing and noted that her conduct would have warranted a finding of contempt had the proceeding been held in person. While the trial court was discussing the next trial date with the attorneys, it stated, "we can't really proceed with [defendant] in court because she is so disruptive." When defendant was later permitted to rejoin the hearing to receive the next court date, she again interrupted the proceedings and challenged the court's authority.

¶ 10    On June 16, 2021, defendant arrived 45 minutes late for court and remained outside the courtroom. When directed to enter, defendant instead began to leave, and the trial court issued a warrant for her arrest. The trial court noted that defendant had a history of being disruptive and that it had been unable to hold court in a dignified manner. Following her arrest, officers discovered that defendant had a phone concealed under her clothing and it appeared to be recording. The trial court ordered the phone to be confiscated and suggested that defendant be investigated for indirect contempt of court.

¶ 11    On June 17, 2021, defendant appeared via videoconference but refused to speak with the public defender, stating that she did not consent to representation. The trial court informed defendant that she was not qualified to represent herself and would be represented by the public defender. Defendant continued to interrupt the proceedings and raise challenges to the trial court's authority, and the court held further proceedings with defendant on mute. After a fitness hearing

was scheduled, and the trial court unmuted defendant to inform her of the next proceeding, defendant again engaged in disruptive conduct before the hearing concluded.

¶ 12    On June 22, 2021, prior to a scheduled fitness hearing, the trial court entered a written order (the standing order) addressing defendant's conduct. The order noted that the case had been pending for several years and that delays were attributable in part to defendant's failure to appear and her disruptive behavior in prior proceedings. The order required defendant to appear on time, refrain from interrupting proceedings, speak only when permitted, and comply with courtroom rules, including a prohibition on recording devices. The order further directed defendant to address the trial court appropriately, not by first name, and warned that continued disruptions would result in her removal from the courtroom or a finding of contempt. The public defender reviewed the order with defendant privately. When defendant was brought before the court, the trial court admonished defendant regarding compliance with courtroom decorum and the consequences of further violations. The case was continued for a fitness evaluation due to defendant's lack of initial cooperation with the evaluator, and the trial court reduced defendant's bond, allowing for release on electronic home monitoring.

¶ 13    At subsequent hearings, defendant continued to engage in disruptive conduct and to challenge the trial court's authority. On August 3, 2021, the trial court found defendant in direct contempt for violating the standing order. After consulting with counsel, defendant indicated a willingness to cooperate, and the trial court vacated the contempt finding. Based on the fitness evaluator's testimony, the trial court found defendant fit to stand trial.

¶ 14    On October 12, 2021, defendant, through appointed counsel, filed a motion to suppress, arguing that the traffic stop was not supported by probable cause or reasonable suspicion and that all resulting evidence should be excluded.

¶ 15    On December 20, 2021, the trial court held a hearing on the motion to suppress. Officer Miller, a seven-year Aurora police officer, testified that on March 20, 2018, at 12:45 a.m., he was patrolling alone in a marked squad car equipped with video recording. He observed defendant driving a silver Mazda and initiated a stop after noticing improper lane usage, prolonged use of a turn signal without turning, erratic lane changes, and the vehicle briefly veering off the road onto gravel. The squad car video was admitted and played in court. Miller testified that he did not know the driver's identity or license status prior to the stop and acknowledged that defendant used turn signals during lane changes.

¶ 16    On cross-examination, Miller testified that defendant's right turn signal remained activated through an intersection and several blocks where no right turn was possible. He observed the Mazda weaving within its lane and briefly leaving the lane, striking gravel. Although not visible on the video, gravel had flown up when the tires went outside the lane. After reentering the lane, defendant made an abrupt lane change into the left lane. Shortly thereafter, she moved back into the right lane and accelerated because she had cut in front of a car that was already driving in the right lane. The car she cut in front of had to brake abruptly to avoid a collision. Miller described the Mazda's speed as inconsistent.

¶ 17    Miller acknowledged that it was not illegal to activate a turn signal without turning and that a driver could forget to turn it off. He also noted the roadway curved slightly where the Mazda had veered out of the lane. Although he believed there was insufficient space for the lane change when defendant moved in front of the other car, no collision occurred. He could not recall whether defendant was traveling above, below, or at the speed limit.

¶ 18    The State moved for a directed finding, arguing that there were multiple traffic violations that established probable cause for a traffic stop. Following argument, the trial court granted the

State's motion. The trial court found that the officer had a reasonable articulable suspicion to conduct a traffic stop based on the totality of the circumstances. The trial court found that defendant cut off another vehicle when moving from the left to the right lane, and that, at one point, she drove outside the right lane into a gravel area. The trial court credited Miller's testimony that the other vehicle had to brake to avoid an accident and that there was gravel spinning up when defendant drove outside the lane. The trial court concluded that Miller had a reasonable, articulable suspicion to pull defendant over for improper lane usage and "to further investigate what was going on with [defendant]."

¶ 19 On April 29, 2022, defendant appeared via videoconference and requested to represent herself, with the assistance of "Moorish counsel." The public defender expressed a *bona fide* doubt as to defendant's fitness. The trial court denied defendant's request for self-representation, citing her inability to follow courtroom procedures, and ordered a further fitness evaluation.

¶ 20 On June 22, 2022, following completion of the evaluation, the parties appeared and defense counsel requested that the matter be set for a fitness hearing. During the proceeding, defendant engaged in disruptive conduct and questioned the trial court's impartiality. She renewed her request for self-representation. The trial court reminded defendant of the standing order and permitted her a limited opportunity to speak. Defendant made various assertions, including that she had retained private counsel, was not the driver of the vehicle, and was being compelled to act improperly by appointed counsel. The trial court denied her request for self-representation, stating that the case would not be further delayed, and advised defendant that she remained free to retain private counsel.

¶ 21 At a July 29, 2022, hearing, the trial court found defendant unfit to stand trial. In doing so, the court observed that defendant understood the nature of the proceedings and was familiar with

the legal process but refused to cooperate with counsel and provided irrational responses to the fitness evaluator. The trial court concluded that defendant was unfit based on her unwillingness to assist in her defense. Defendant appealed from this order and this court reversed, holding that an unwillingness to cooperate, standing alone, was insufficient to support a finding of unfitness. See *People v. Gray*, 2023 IL App (2d) 220357-U, ¶ 14 (order filed December 26, 2023).

¶ 22    On August 24, 2022, defendant again engaged in disruptive conduct in court, and the trial court reviewed the standing order with her. Defendant indicated that she had contacted private counsel, but that counsel was not present. Following testimony from the evaluating physician, the trial court found that defendant could be restored to fitness within one year. At the request of the public defender, the trial court entered an order permitting defendant to turn her cell phone over to the public defender upon arriving at the courthouse entrance as long as counsel did not return it until defendant exited the courthouse.

¶ 23    At an October 20, 2022, status hearing regarding defendant's treatment, defendant was disruptive and was muted during the proceeding. She asserted that she was under duress and questioned the trial court's impartiality. The trial court also noted that defendant was making hand gestures on the screen, which defendant represented as speaking sign language to her family.

¶ 24    On December 1, 2022, the trial court conducted a status hearing on defendant's progress. The public defender stipulated that the most recent treatment reports found defendant fit to stand trial. Defendant objected to the discussion of her health information in open court, so the trial court offered to set the matter for an in-person hearing. Defendant responded that she could not appear in person due to being handicapped but declined to provide further information about her alleged disability. She also requested to proceed *pro se*. The trial court indicated that the request

would be addressed at an in-person hearing and advised defendant that, absent additional information regarding her claimed disability, she was required to appear in court.

¶ 25    On December 6, 2022, at the outset of the proceedings, the trial court reminded the parties of the standing order as to decorum. The trial court further noted that the case was nearly five years old and "ha[d] to move forward and can no longer be delayed because of defendant's disruptive behavior." Based on the parties' stipulation to the most recent treatment reports, the trial court found defendant fit to stand trial, agreeing with the report's assessment that defendant had "a clear understanding of the nature and purpose of the proceedings," and "demonstrate[d] the cognitive and emotional self-regulation to understand, focus, and reason adequately to assist in her defense." The trial court found that defendant was capable of cooperating when she chooses to do so. At that same hearing, defendant requested to proceed *pro se*. In response to the trial court's inquiry, she answered questions regarding her age, education level, belief in the applicability of the United States and Illinois Constitutions, and prior experience with the legal system. Defendant acknowledged the trial court's jurisdiction, agreed to comply with applicable rules and procedures, and understood that she might be at a disadvantage without counsel. Nonetheless, the trial court denied the request, noting that defendant repeatedly asked questions of the court and the public defender during the hearing and concluding that she was not qualified to represent herself. The trial court then set the matter for a jury trial on February 23, 2023.

¶ 26    On December 21, 2022, the trial court held a videoconference hearing on defendant's motion to reconsider her request for self-representation. Following argument, the trial court denied the motion, stating:

> "Okay. I'm going to respectfully deny the motion to reconsider the defendant representing herself. During my questioning of her, she asked what the meaning was of

common words. I have observed her over—I don't know—at least two years now in this court on this case. She has disobeyed court orders at least on one court date. She has talked incessantly about things that are not related to this case. I have reason to believe she may not follow the law in this case.

So although she does have the right to represent herself, I don't think she is qualified or it would be appropriate to let her represent herself in this case. So I'm going to respectfully deny the motion to [reconsider]."

Thereafter, the trial court noted that it had received a waiver of the right to appear in court and stated that it wished to review the document with defendant. The trial court further noted for the record that defendant had twice held paperwork up to the screen during the hearing. Defendant denied doing so and stated that she was merely reviewing her own documents. The trial court instructed her not to hold documents up to the screen during the proceeding. Defendant stated she would comply but reiterated that she had not held up any paperwork. The trial court responded that it had observed her do so twice but would not argue the point, and reminded defendant that she was required to comply with court orders and maintain proper decorum.

¶ 27 On February 2, 2023, during a videoconference hearing, defendant questioned whether the court swore an oath to uphold the Constitution. The trial court declined to answer and reminded defendant of the standing order regarding decorum. When defendant later attempted to interrupt again, the trial court told her she was on the verge of being held in contempt. Following the hearing, the trial court entered an order striking the trial date, noting that the case could not proceed while defendant's appeal from the July 2022 unfitness finding was pending. As noted above, this court ultimately reversed that finding on December 26, 2023. *Id.*

¶ 28    On July 23, 2024, the trial court (Judge Donald M. Tegeler, Jr.) held a jury trial.  The testimony relevant to the issues raised on appeal is as follows.  At trial, Miller's testimony was consistent with his testimony at the suppression hearing.  In addition, he testified in relevant part that, while observing the Mazda prior to the traffic stop, the vehicle was traveling slower than the normal flow of traffic.  Upon approaching defendant at the driver's side window after the traffic stop, he detected a strong odor of alcohol on her breath and observed that her eyes were glassy.  After placing her under arrest, defendant behaved erratically, *e.g.*, she was yelling, claiming she was pregnant, and stating that her uncle was the mayor.  At the police station, approximately 60 to 90 minutes after the stop, she continued to act erratically, refused a breath test, and called the officer names such as "moron," "rookie," and "idiot."  Based on the strong odor of alcohol coming from defendant's breath, her glassy eyes, erratic behavior, and the manner in which she was driving, Miller opined that defendant was driving under the influence.  He further testified that, based on his training and experience, defendant's driving was consistent with impairment.

¶ 29    Following closing arguments, the jury found defendant guilty on all counts.  Defendant subsequently filed a motion for a new trial, arguing in part that the trial court erred in denying her motion to suppress and her request for self-representation.  After denying the posttrial motion, the trial court sentenced defendant to three years' imprisonment for aggravated DUI, one year for driving while license revoked, and 300 days each for obstructing a peace officer and obstructing identification.  The trial court later denied defendant's motion to reconsider sentence but appointed *Krankel* counsel to address her *pro se* claims of ineffective assistance of counsel.  On February 20, 2025, appointed counsel stated that defendant did not wish to pursue any *Krankel* claims, and defendant thereafter filed a timely notice of appeal.

¶ 30                                        II. ANALYSIS

¶ 31                              A. Motion to Suppress

¶ 32    Defendant's first contention on appeal is that the trial court erred in denying her motion to suppress. She argues that the dashboard video does not show her passenger-side tires crossing the white fog line or that she made an unsafe lane change. She further maintains that, even if her tires crossed the fog line, the deviation was justified by the curve in the roadway. Finally, she asserts that the stop was not justified under the community caretaking exception. The State responds that the traffic stop was supported by a reasonable suspicion of traffic violations and/or DUI, and alternatively, by the community caretaking exception.

¶ 33    "When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion." *People v. Brooks*, 2017 IL 121413, ¶ 22. During a suppression hearing, a defendant must first make a *prima facie* showing that the evidence at issue was obtained through an illegal search or seizure. *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). If that showing is made, the burden shifts to the State to present evidence countering the defendant's *prima facie* case; however, the ultimate burden of proof remains with the defendant. *Id.* at 307.

¶ 34    Where, as here, the denial of a motion to suppress is based on the grant of a motion for directed finding, the trial court does not view the evidence in the light most favorable to the nonmovant. Rather, it first determines whether the nonmovant has made out a *prima facie* case and then weighs all the evidence, including that which favors the movant. *People v. Green*, 2014 IL App (3d) 120522, ¶ 28. The trial court's decision on a motion for a directed finding will only be reversed if it is against the manifest weight of the evidence. *Id.*; see also *People v. Mueller*, 2021 IL App (2d) 190868, ¶¶ 32-37 (noting courts' inconsistencies in determining the proper standard of review when a suppression ruling is based on a directed finding but concluding that the proper standard is manifest weight of the evidence). In conducting our review, we may

consider both the evidence presented at the suppression hearing and the evidence introduced at trial. *People v. Caballero*, 102 Ill. 2d 23, 36 (1984).

¶ 35    Traffic stops are subject to the fourth amendment's reasonableness requirement. *People v. Hackett*, 2012 IL 111781, ¶ 20. A police officer may conduct a brief investigatory stop where specific, articulable facts, together with rational inferences, reasonably warrant the intrusion; the officer's belief need not rise to the level of probable cause that a crime has been committed. *Id.* The test is objective and considers whether, under the totality of the circumstances, the facts available to the officer would warrant a person of reasonable caution in believing the stop was appropriate. *People v. Timmsen*, 2016 IL 118181, ¶ 9. Further, the relevant question is whether reasonable suspicion existed, not whether the officer correctly articulated the basis for the stop. *People v. Anderson*, 2020 IL App (2d) 190443, ¶ 13.

¶ 36    In the present case, the traffic stop was justified based on a reasonable suspicion that defendant committed improper lane usage and that she was driving while impaired. With respect to improper lane usage, section 11-709(a) of the Illinois Vehicle Code (Code) requires that a vehicle be driven as nearly as practicable within a single lane and not moved from that lane until the driver has determined the movement can be made safely. 625 ILCS 5/11-709(a) (West 2018). In *People v. Smith*, 172 Ill. 2d 289 (1996), our supreme court held:

> "The plain language of the statute establishes two separate requirements for lane usage. First, a motorist must drive a vehicle as nearly as practicable entirely within one lane. Second, a motorist may not move a vehicle from a lane of traffic until the motorist has determined that the movement can be safely made. It follows that when a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute." *Id.* at 296-97.

¶ 37    Here, Officer Miller observed both violations of section 11-709(a) of the Code (625 ILCS 5/11-709(a) (West 2018)). He testified that he observed defendant cross the white fog line with her passenger-side tires, striking gravel, and later execute an unsafe lane change that forced another driver to brake abruptly. These observations provided Officer Miller with a reasonable suspicion that defendant violated section 11-709(a).

¶ 38    Defendant argues that the video shows only contact with, rather than the crossing of, the fog line and does not depict any gravel disturbance. Our review of the video indicated that at least part of the rear passenger-side tire crossed over the white fog line. As to the gravel, the video is not controlling if live testimony had a role in resolving a disputed issue of fact. *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 30 (even where evidence includes a video, great deference is due to the factual findings and credibility assessments of the trial court, unless the record shows that the findings are against the manifest weight of the evidence). The trial court found Miller's testimony regarding the gravel disturbance to be credible, and the video does not conclusively contradict his account. Accordingly, we cannot say that credibility determination was against the manifest weight of the evidence.

¶ 39    Defendant argues that her lane deviation did not justify the stop because there was a reason for it, namely, the road curved to the right at the particular place where her tires contacted the white line. She also argues that the lane change did not justify the stop because no collision occurred. These facts do not negate a reasonable suspicion. A curved roadway does not automatically justify a failure to remain within the lane, and the absence of a collision does not render a lane change safe, especially where another driver was forced to brake abruptly. Officer Miller needed only reasonable suspicion of a traffic code violation to justify a traffic stop, not probable cause to arrest

her for those violations. *Hackett*, 2012 IL 111781, ¶¶ 27-28. The evidence was sufficient to meet this standard.

¶ 40 Finally, the traffic stop was also justified because, under the totality of the circumstances, Officer Miller had a reasonable suspicion that defendant was driving under the influence. In addition to the lane violations, Officer Miller testified, and the video confirms, that defendant was weaving within her lane and driving at inconsistent speeds. "It is well accepted in Illinois that erratic driving, including weaving within a single lane, can give rise to reasonable suspicion that a driver is under the influence, justifying a traffic stop." *Anderson*, 2020 IL App (2d) 190443, ¶ 15 (citing *People v. Greco*, 336 Ill. App. 3d 253, 257 (2003)). Although Miller did not expressly articulate DUI as a basis for the stop at the suppression hearing, we may consider his trial testimony, where he opined that defendant was under the influence based, in part, on the manner in which she was driving. See *Caballero*, 102 Ill. 2d at 36. Further, although the State did not argue at the suppression hearing that the stop was justified on that basis, it may advance any basis supported by the record on appeal to sustain the trial court's ruling. *People v. Keller*, 93 Ill. 2d 432, 437 (1982) (when the State is the prevailing party on a motion to suppress, it may raise any argument supported by the record in support of the trial court's ruling). Because we may affirm on any basis appearing in the record (*People v. Stroup*, 397 Ill. App. 3d 271, 275 (2010)), we conclude that, based on Officer Miller's testimony and our review of the video recording, the traffic stop was also justified by a reasonable suspicion that defendant was driving while impaired. Accordingly, the denial of defendant's motion to suppress was not against the manifest weight of the evidence. In light of this conclusion, we need not address the parties' arguments regarding the community caretaking exception.

¶ 41                                  B. Motion for Self-Representation

¶ 42 Defendant's second contention on appeal is that the trial court erred in denying her December 2022 request for self-representation. Defendant argues that her request was timely and unequivocal and that she was capable of making a knowing and intelligent waiver of counsel. She notes that, in denying her motion, the trial court stated that she was not qualified to represent herself, and she acknowledges that a waiver of counsel may be denied based on a defendant's courtroom behavior. Defendant contends that the trial court erred because she was not required to be "qualified" to represent herself and did not engage in improper conduct on or after December 6, 2022.

¶ 43 "A defendant has a constitutional right to represent himself." *People v. Baez*, 241 Ill. 2d 44, 115 (2011). A defendant's waiver of counsel must be knowing, intelligent, and unambiguous. *Id.* at 116. In determining whether a defendant has the requisite capacity to make such a waiver, courts consider factors including the defendant's age, level of education, mental capacity, and prior involvement in legal proceedings. *People v. Kessler*, 113 Ill. App. 3d 354, 359 (1983). The validity of a waiver depends on the particular facts and circumstances of each case, including the defendant's background, experience, and conduct. *Baez*, 241 Ill. 2d at 116. A court's inquiry focuses on the defendant's ability to make a knowing and intelligent waiver, not the defendant's ability to provide an effective defense. *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 24. A defendant need not possess the skill and experience of an attorney to choose self-representation, and even an unwise decision must be honored if it is made knowingly and intelligently. *Baez*, 241 Ill. 2d at 116-17.

¶ 44 The right to self-representation, however, is not absolute. A court may deny a defendant's request to proceed *pro se* where the defendant engages in serious and obstructionist misconduct that would result in an abuse of the dignity of the courtroom, or seeks to waive counsel as a means

to delay or disrupt the proceedings. *Woodson*, 2011 IL App (4th) 100223, ¶ 24 (citing *People v. Ward*, 208 Ill. App. 3d 1073, 1084 (1991)). Although serious and obstructionist misconduct is often a basis to terminate self-representation after a defendant has already been representing himself, "in *exceptional situations* *** a defendant's behavior in the course of seeking to obtain self-representation may in itself be disruptive and thereby justify denying his motion to proceed *pro se*." (Emphasis in original.) *Ward*, 208 Ill. App. 3d at 1084. To warrant denial on this basis, the defendant's pretrial misconduct must strongly indicate that the defendant would continue to disrupt proceedings if allowed to represent herself. *People v. Rainey*, 2019 IL App (1st) 160187, ¶ 74. Accordingly, courts typically require an ongoing pattern of pretrial misconduct, rather than a single, isolated incident, before denying a defendant the right of self-representation. *Id.*

¶ 45 Courts must indulge in every presumption against waiver of counsel. *People v. Burton*, 184 Ill. 2d 1, 23 (1998). We review a trial court's decision on a request for self-representation for an abuse of discretion. *Baez*, 241 Ill. 2d at 116. An abuse of discretion occurs where the ruling is arbitrary, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). A court also abuses its discretion when it applies an improper legal standard. *Woodson*, 2011 IL App (4th) 100223, ¶ 21.

¶ 46 Defendant is correct that a trial court may not deny self-representation based on a defendant's lack of legal skill or ability to conduct a proper defense. *Id.* ¶ 23. However, the record demonstrates that the trial court's finding that defendant was not qualified to represent herself was based on her history of disruptive and obstructionist conduct in the courtroom, rather than her legal ability. In denying the motion and the subsequent motion to reconsider, the trial court cited defendant's repeated failures to follow court orders, her persistent focus on irrelevant matters, and concerns that she would not adhere to applicable legal standards. Even defendant acknowledges

in her brief that, in stating she was not qualified to represent herself, the trial court may have been referring to her history of disruptive courtroom behavior. We agree. When read in context, the trial court's comments reflect an assessment of defendant's conduct in the courtroom. On this basis, as explained *infra*, the denial of defendant's motion for self-representation was not arbitrary or unreasonable.

¶ 47    The record shows that defendant engaged in an ongoing pattern of pretrial misconduct that disrupted court proceedings. As early as March 5, 2020, defendant questioned the legitimacy of the trial court in a manner the trial court found inappropriate. Defendant failed to appear for a scheduled trial date on August 3, 2020, resulting in the issuance of a warrant. At a December 10, 2020, hearing, defendant repeatedly asked the trial court whether it was an "Article III, Section 2 Judge," and, when the trial court declined to answer because the question was irrelevant, defendant argued with the court that it was relevant. The trial court asked defendant three times whether she planned to hire an attorney, but she refused to respond, instead asserting that she filed a delegation of authority and that jurisdiction could not be assumed. When the trial court appointed the public defender, defendant refused to join a breakout room to speak with counsel.

¶ 48    At a February 2021 hearing, defendant brought a phone into the courtroom and, when the trial court directed her to give it to the clerk, defendant refused to do so and questioned whether her First Amendment rights were being infringed. Defendant referred to the trial court by its first name, asked whether it was impersonating an officer of the court, and accused it of breaching its oath to uphold the Constitution. Her conduct disrupted the proceedings to the point that the trial court admonished her for undermining the decorum of the court. At an April 21, 2021, hearing, defendant was so disruptive that the trial court ultimately removed her from the proceeding. She

was removed at multiple other hearings, and her conduct prompted concerns regarding her fitness to stand trial.

¶ 49    On June 16, 2021, defendant arrived late and then refused to enter the courtroom, prompting the trial court to enter a warrant for her arrest. When she was arrested, a phone was found on her person. The trial court noted, for the record, defendant's history of disrupting proceedings and impeding the dignity of the court. Her behavior continued, leading the trial court to issue the standing order directing her to appear in court on time, refrain from interrupting proceedings, and comply with courtroom rules. Defendant repeatedly violated that order, was warned about contempt, and was found in contempt on August 3, 2021, though that finding was later vacated.

¶ 50    Defendant's interruptions and obstructionist behavior persisted, prompting the public defender to again question her fitness to stand trial. At another hearing, defendant claimed she could not appear in court because she was handicapped but refused to provide any information about the nature of her alleged handicap. Based on this record, defendant's conduct clearly demonstrated "a persistent pattern of pretrial misconduct," not just "a single, isolated instance" (*Rainey*, 2019 IL App (1st) 160187, ¶ 78), and constitutes the type of exceptional circumstance justifying denial of the right to self-representation (*Ward*, 208 Ill. App. 3d at 1084).

¶ 51    The trial court's fitness findings further support its ruling. In finding defendant unfit in July 2022, the trial court observed that although defendant was intelligent and understood the legal process, she refused to cooperate. When the trial court later found her fit to stand trial on the day it denied her request for self-representation, it noted that she understood the nature and purpose of the proceedings, was capable of assisting in her defense, and could cooperate when she wanted to. These findings support the conclusion that defendant's disruptive conduct was willful and likely

to continue. The trial court therefore had a reasonable basis to conclude that defendant would remain disruptive, thwart orderly proceedings, and fail to adhere to courtroom decorum if permitted to represent herself.

¶ 52   Defendant argues that the trial court erred because she did not engage in obstructionist conduct on or after December 6, 2022. The record does not support this assertion. On December 21, 2022, after denying defendant's motion to reconsider, the trial court went over defendant's waiver of her right to appear in court. During that process, the trial court noted that defendant was holding up paperwork to the videoconference screen and, when instructed not to do so, defendant denied that she was holding up any paperwork. On February 2, 2023, defendant attempted to speak, despite the standing order requiring her to remain silent, and the trial court stated it was on the verge of finding her in contempt. Further, the record reflects that, on February 15, 2024, defendant brought her cell phone into the courthouse despite the August 2022 order requiring her to turn it over to counsel before entering the courthouse. The record thus reflects continued misconduct and noncompliance with trial court directives.

¶ 53   Finally, it is well settled that a reviewing court may affirm on any basis appearing in the record. *Stroup*, 397 Ill. App. 3d at 275. At the time the trial court ruled on defendant's motion for self-representation, the case had been pending for five years, and trial was scheduled to begin in two months. The record shows that delays were attributable, in significant part, to defendant's conduct, including her failure to appear, tardiness, and repeated disruptions, as specifically noted in the standing order. A request for self-representation may be denied where it is intended to delay proceedings. See *Woodson*, 2011 IL App (4th) 100223, ¶ 24. Thus, we may also affirm on the basis that defendant's request to waive counsel was an attempt to delay trial. Although trial did

not ultimately commence until July 2024, our review focuses on the circumstances as they existed at the time of the trial court's ruling.

¶ 54                                 III. CONCLUSION

¶ 55    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 56    Affirmed.